IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| Andrea J. Magwood,<br><br>Plaintiff,<br>v.<br><br>Wayne Whitworth, in his individual capacity, and Kelle Spears,<br><br>Defendants. | ) | Civil Action No. 2:09-2751-RMG-BM<br><br><br><br><br>**REPORT AND RECOMMENDATION** |

This action was originally filed by the Plaintiff, pro se, in the South Carolina Court of Common Pleas, Charleston Division, Ninth Judicial Circuit. The case was subsequently removed to this Court by the Defendants Whitworth and Spears on October 22, 2009 on the basis of federal question jurisdiction.[1]

The Defendants filed a motion for summary judgment pursuant to Rule 56, Fed.R.Civ.P. on November 4, 2010. As the Plaintiff is proceeding pro se, a Roseboro order was entered by the Court on November 8, 2010, advising Plaintiff of the importance of a motion for summary judgment and of the need for her to file an adequate response. Plaintiff was specifically advised that if she failed to respond adequately, the Defendants' motion may be granted, thereby ending her case. Plaintiff thereafter filed a memorandum in opposition to the Defendants' motion on December 13, 2010, to which the Defendants filed a reply memorandum on December 20, 2010.

[1]The case originally included several additional Defendants, all of whom were dismissed as party Defendants by Order filed November 4, 2010. See Court Docket No. 52. See also Court Docket No. 30.





The Defendants' motion is now before the Court for disposition.[2]

**Background and Evidence**

Plaintiff alleges in her unverified complaint[3] that on or about June 25, 2004, an individual with a psychiatric history named Turian Taylor made allegations against her which led to a warrant being issued for Plaintiff's arrest. Plaintiff alleges that she was charged with exploitation and physical abuse of a vulnerable adult, with the affidavit for the warrant having been signed by the Defendant Kelle Spears and supported by written statements from the Defendant Whitworth and former Defendant Toni Melendez. Plaintiff alleges that, as a result of this warrant being issued, she was jailed on July 29, 2004, and released the following day. Plaintiff further alleges that on January 19, 2007, the Solicitor for the Ninth Judicial Circuit nolle prossed these charges. Based on these allegations Plaintiff asserts a cause of action for malicious prosecution against the Defendants.

In support of summary judgment in the case, the Defendant Whitworth has submitted an affidavit wherein he attests that at all times relevant to the allegations of Plaintiff's complaint he was an agent with the South Carolina Department of Labor, Licensing and Regulation, Board of

[2]This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(g), D.S.C. The Defendants have filed motion for summary judgment. As this is a dispositive motion, this Report and Recommendation is entered for review by the Court.

[3]In this Circuit, verified complaints by pro se litigants are to be considered as affidavits and may, standing alone, defeat a dispositive motion when the allegations contained therein are based on personal knowledge. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991). However, Plaintiff has filed an *unverified* Complaint. Indeed, the copy of the Complaint filed with this Court as part of the removal package does not even reflect a signature by the Plaintiff on her Complaint. Therefore, the undersigned has not considered the factual allegations set forth in the unverified Complaint as evidence in issuing a recommendation in this case.





Long Term Care Administrators. Whitworth attests that he investigated Plaintiff and her facility for infractions of the licensing laws, and that during his investigation he learned of allegations that the Plaintiff was forcing one of her nursing home residents, Turian Taylor, to withdraw money from her bank account and turn it over to the Plaintiff, and that if Taylor refused, Plaintiff would inflict bodily injury on Taylor to make her comply. Whitworth attests that he also received complaints of other thefts by the Plaintiff from other residents, as well as assaults against residents and intentional mis-medicating of residents. Whitworth attests that she also spoke with Plaintiff's employees and received statements from them relating to these complaints. Whitworth attests that he filed a complaint against Plaintiff with the North Charleston Police Department on April 21, 2004, meeting with the Defendant Spears (a detective) to make the complaint. Whitworth attests that he had no involvement or input into the decision about whether or not to prosecute Plaintiff for these charges, which was a decision solely made by the Solicitor's Office. Whitworth attests that at all times he followed the proper procedures for the performance of his duties, adhered to applicable laws, and paid just and careful attention to protecting the civil rights of all persons involved. See generally, Whitworth Affidavit.

The Defendant Kelle Spears has also submitted an affidavit wherein she attests that she is a detective with the North Charleston Police Department. Spears attests that on April 21, 2004, Wayne Whitworth, an agent with the South Carolina Department of Labor, filed a complaint against Plaintiff with the North Charleston Police Department. Spears attests that she met with Whitworth to take the complaint and also received a verbal statement from Turian Taylor, the alleged victim, as well as statements from Plaintiff's employees. Spears attests that she then applied for and received two warrants for Plaintiff's arrest on June 25, 2004, and that Plaintiff was thereafter arrested





on June 29, 2004. Spears attests that she also obtained a search warrant on June 29, 2004 for the financial and medical records of past and current residents of Plaintiff's facility, and a second search warrant on July 1, 2004 in order to retrieve records and files from Plaintiff's computer. Spears attests that the computer seized with the search warrant was returned to the Plaintiff on June 28, 2006, that the Solicitor dismissed the charges against Plaintiff on January 19, 2007, and that the medical and financial records seized with the search warrant were returned to the Plaintiff on June 25, 2008. Spears attests that she had no involvement or input into the decision about whether or not to prosecute Plaintiff for these charges, that decision being made solely by the Solicitor's Office, and that all times relevant to this action she followed the proper procedures for the performance of her duties. See generally, Spears Affidavit.

In addition to these affidavits, the Defendants have submitted copies of the Incident Report from the North Charleston Police Department dated April 21, 2004; two arrest warrants dated June 25, 2004 with attached affidavits; copies of search warrants; and a chain of custody sheet.

The response Plaintiff filed to the Defendants' motion is in affidavit form. Much of Plaintiff's affidavit consists of arguments in favor of her claim; however, Plaintiff's factual assertions are set forth herein. Plaintiff attests that on June 25, 2004, Turian Taylor (who Plaintiff describes as an individual with a "psychiatric history") made allegations against her which led to a warrant being issued for her arrest. Plaintiff attests that she was charged with exploitation and physical abuse of a vulnerable adult. Plaintiff attests that the affidavit attached to the arrest warrant was signed by the Defendant Spears, and was supported in part on written statements from the Defendant Whitworth. Plaintiff attests that this warrant resulted in her arrest, but that the charges were ultimately nolle prossed by the Solicitor. Plaintiff attests that she has no further charges filed





against her for any other "thefts", and is not aware of any other ongoing investigations of her. Plaintiff further attests that she has never received any written statements of any witnesses or former employees in this matter, and that she has never been provided with copies of any of the "statements" from other individuals which Spears and Whitworth attest to in their affidavits. Plaintiff attests that as a result of these events, she has suffered great loss, that both her personal and business reputations have suffered, and she has experienced declining health. See generally, Plaintiff's Affidavit.

In response to Plaintiff's affidavit, and as attachments to their reply memorandum, Defendants have submitted copies of written statements that were given by April Brown, Claudette Pinckney, and Turian Taylor. Defendants state that all three of these statements were provided to Whitworth during his investigation, and were in turn provided to Detective Spears. Brown and Pinckney's statements are notarized.

April Brown attests in her statement that she first began working for the Plaintiff in 1996, and then started working for her again in July 2003, continuing until February 2004. Brown attests that in the period she worked for the Plaintiff she witnessed residents being fed extremely outdated food, that residents were treated "very mean", and that Plaintiff told her employees on many occasions to "keep the residents in line and don't run to their every call." Brown further attests that Plaintiff told employees to "walk right past them and ignore them and she told us to pinch them if they won't shut up and do as we say." Brown attests that she personally saw the Plaintiff pinch and push resident Harriet Alston, and also kick and step on resident Estelle Brown. Brown attests that she also saw Plaintiff make "Mr. Joe McClennan work outside raking that big yard front & back, then cut the grass. Then she would come and pick him up to take him to her house to do the same thing and it was not voluntary, many times Joe would not feel like going but he was afraid to tell her



because she would get mad."

Brown further attests that on different occasions and around the Christmas holidays residents would get little cards with money in them, but that Plaintiff would open their mail and read the card to them and then keep the money, including checks from the government. Brown attests that Plaintiff told her that she could use that money to purchase a gift for her daughter. Brown attests that Plaintiff would tell residents who did not receive their monthly allowance that the money was being spent on their medication. Brown also attests that during the winter the heater was not working, so Plaintiff placed space heaters in the bedrooms and would then put them in her office when visitors came. Brown also attests that Plaintiff restricted visitation to the residents, and that on one occasion a "Mrs. Taylor" [apparently Turian Taylor] was crying and saying that Plaintiff had taken all of her money. Brown attests to generally poor conditions at the facility, including that residents were not taken to see physicians and were not allowed adequate recreation, that Plaintiff took possessions from residents (including a "long fur coat" from Mrs. Taylor), and that when packages were received they were not given to residents.

Brown further attests that Plaintiff did not keep proper paperwork and would put dates on documents like she was keeping a record when she really was not, that Brown and other employees sometimes had to purchase food and toilet paper for residents out of their own pockets, that on one occasion the air conditioner went out during the summer and Plaintiff would not get it fixed, and that the conditions at Plaintiff's facility were generally poor and that it was improperly managed. See generally, Brown Notarized Statement.

Claudette Pinckney attests in her statement that she was employed by the Plaintiff from April [illegible] until March 2004. Pinckney attests that Plaintiff would tell her to give





residents medicine that did not belong to them when they ran out of theirs; that on several occasions she saw Plaintiff step on, push, and kick residents; that Plaintiff made her hide an electric heater on one occasion when the fire inspector came to the facility and that Plaintiff kept electric heaters in all of the bedrooms, and that during the summer the air conditioner did not work. Pinckney attests that resident "Ms. Taylor" cried and complained to her about missing money and that Plaintiff would deny this resident medicine. Pinckney further attests that Plaintiff did not employ sufficient people to care for the residents, that residents were served outdated food, that Plaintiff would try to get employees to lie to cover up things going on at the facility, and that the facility was so financially mismanaged that employees' paychecks bounced. Pinckney also attests that Plaintiff did not give residents their allowance, and that she would take money sent to residents by their families and keep it. See generally, Pinckney Notarized Statement.

Taylor states in her statement that she was placed in residential care at the facility by the Department of Social Services.[4] Taylor states that one time when she was taking a shower Plaintiff went to her room and took her money out of her purse, that Plaintiff also took her bicycle, and that she later "found that my mink coat was missing also." Taylor also states that Plaintiff took her to her bank to withdraw some money and that Plaintiff forced her to sign the withdrawal slip. Taylor states that when she would refuse Plaintiff would bite her hand, and that she was crying when she was at the bank. Taylor also states that she had to buy her own heater for her room in order to keep it warm, and that most of the belongings she had when she was living on her own (such as kitchen utensils, towels, and other personal property) were taken from her by the Plaintiff. Taylor also states that she had an operation on her legs, but that sometimes Plaintiff would push her to get

---

[4] Taylor is now deceased.





her to go. Taylor states that while living at the facility she felt like she was being "emotionally tortured". See generally, Taylor Statement.

**Discussion**

Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Rule 56, Fed.R.Civ.P. The moving party has the burden of proving that judgment on the pleadings is appropriate. Once the moving party makes this showing, however, the opposing party must respond to the motion with specific facts showing there is a genuine issue for trial. Rule 56(c), Fed.R.Civ.P. Further, while the Federal Court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, see Cruz v. Beto, 405 U.S. 319 (1972); Haines v. Kerner, 404 U.S. 519 (1972), the requirement of liberal construction does not mean that the Court can ignore a clear failure in the pleadings to allege facts which set forth a Federal claim, nor can the Court assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Social Services, 901 F.2d 387 (4th Cir. 1990). Here, after careful review and consideration of the arguments and evidence presented, the undersigned finds and concludes that the Defendants are entitled to summary judgment in this case.

Plaintiff asserts her malicious prosecution claim against these Defendants pursuant to 42 U.S. C. § 1983.[5] As public employees, both Defendants are subject to suit for damages under § 1983 in their individual capacities. Will v. Michigan Dep't of State Police, 491 U.S. at 71; Hafer

[5]While Defendants also discuss possible defenses to Plaintiff's claim as a state law cause of action, Plaintiff clearly asserts her claim against these Defendants in her complaint as a Constitutional claim under § 1983. See Complaint (First Cause of Action, ¶ 58).





v. Melo, 112 S.Ct. 358, 365 (1991); Goodmon v. Rockefeller, 947 F.2d 1186 (4th Cir. 1991); Inmates v. Owens, 561 F.2d 560 (4th Cir. 1977). However, although subject to suit under § 1983, Plaintiff has failed to submit sufficient evidence to give rise to a genuine issue of fact as to whether either named Defendant is subject to liability for having violated her constitutional rights.

In order to pursue a claim for malicious prosecution, Plaintiff must show both that the initiation or maintenance of the proceeding against her was without probable cause to support it, and that the matter was terminated in her favor. Lambert v. William, 223 F.3d 257, 260-261 (4th Cir. 2000); cf. Jordan v. Deese, 452 S.E.2d 838, 839 (S.C. 1995). Here, the charges against Plaintiff were nolle prossed, and since the Defendants have not contested the basis for the dismissal of these charges, it is at least arguable for purposes of summary judgment that the state prosecution was terminated in Plaintiff's favor. White v. Coleman, 277 F.Supp. 292, 297 n. 2 (D.S.C. 1967); cf. Rose v. Bartle, 871 F.2d 331, 349 (3d Cir. 1989); Carr v. Town of Dewey Beach, 730 F.Supp. 591, 598 (D.Del. 1990). Nevertheless, this claim is still subject to dismissal as Plaintiff has failed to present evidence sufficient to give rise to a genuine issue of fact as to whether either of these two Defendants initiated or maintained the criminal proceedings against her without probable cause.

In assessing the existence of probable cause, whether an arrestee is ultimately found to be guilty or innocent on the criminal charge itself is not determinative. White, 277 F.Supp. at 297. Rather, courts examine the totality of the circumstances known to the officer or officers at the time of the arrest. Taylor v. Waters, 81 F.3d 429, 434 (4th Cir. 1996)[in assessing the existence of probable cause, courts examine the totality of the circumstances known to the officer or officers at the time of the arrest]. To prove an absence of probable cause, Plaintiff must set forth sufficient facts to show that a reasonable officer would not have been justified in concluding that she committed the





criminal act at issue. Brown v. Gilmore, 278 F.3d 362, 368 (4th Cir. 2002). Plaintiff has failed to make this showing. To the contrary, the affidavits and other exhibits presented clearly show that both of the Defendants received information, including sworn statements, from employees and at least one resident of Plaintiff's nursing facility in which various assertions of misconduct were outlined. This information was then presented to a neutral judicial officer, who issued arrest warrants on the charges of exploitation of a vulnerable adult and physical abuse of a vulnerable adult, both crimes under state law. See Defendants' Exhibits A, B, and C; see also S.C. Code Ann. § 43-35-88(B) and (D), as amended.

Plaintiff has provided no evidence whatsoever to counter this evidence, or to support the general and conclusory claims made in her complaint and in her affidavit that Taylor's statement should not have been accepted because she was "mentally incapacitated", or that Whitworth and Spears failed to follow usual investigative practices in their investigation of these allegations. Morgan v. Church's Fried Chicken, 829 F.2d 10, 12 (6th Cir. 1987)["Even though pro se litigants are held to less stringent pleading standards than attorneys the court is not required to 'accept as true legal conclusions or unwarranted factual inferences.'"]. The Court is not required to accept as true such legal generalities or conclusions as a basis to deny summary judgment, particularly when substantial evidence has been presented to the Court to show that both of these Defendants had probable cause to seek the arrest warrants issued in this case. See Papasan v. Allain, 478 U.S. 265, 286 (1986)[Courts need not assume the truth of legal conclusions couched as factual allegations.].

To prove an absence of probable cause, Plaintiff must set forth facts which made it unjustifiable for the Defendants to conclude that she was violating the law. White, 277 F.Supp. at 297. Plaintiff has not only failed to present such evidence, she concedes in her affidavit that Taylor





made the allegations which led to the warrant being issued for her arrest. See Plaintiff's Affidavit, ¶ 3. As a basis for her claim, Plaintiff simply notes that the charges against her were dismissed, and complains that they should never have been brought. This is not sufficient "evidence" to give rise to a genuine issue of fact as to whether either named Defendant was unjustified in concluding that she had committed a criminal act based on the totality of the circumstances known to the Defendants at the time of Plaintiff's arrest. Taylor, 81 F.3d at 434 [in assessing the existence of probable cause, courts examine the totality of the circumstances known to the officer or officers at the time of the arrest]; Brown, 278 F.3d at 368 [to prove an absence of probable cause, Plaintiff must set forth sufficient facts to show that a reasonable officer would not have been justified in concluding that he committed the criminal act at issue].

**Conclusion**

The undersigned can discern no constitutional violation in the evidence presented to this Court. Accordingly, it is recommended that the Defendants' motion for summary judgment be granted, and that this case be **dismissed**.

The parties are referred to the Notice Page attached hereto.

Bristow Marchant
United States Magistrate Judge

January 26, 2011
Charleston, South Carolina





**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).



