IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

RECEIVED
USDC, CLERK, CHARLESTON, SC
2011 FEB 18  P 1: 24

| | |
|---|---|
| Andrea J. Magwood, | Civil Action No. 2:09-cv-2751-RMG-BM |
| Plaintiff, | |
| vs. | **ORDER** |
| Wayne Whitworth, in his individual capacity, and Kelle Spears, | |
| Defendants. | |

Plaintiff filed this *pro se* action alleging a cause of action for malicious prosecution against the Defendants. As a result, the case was automatically referred to a United States Magistrate Judge for all pretrial proceedings pursuant to 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(g), D.S.C. The Magistrate recommended granting Defendants' motion for summary judgment. (Dkt. No. 61). Plaintiff objected to the R&R. (Dkt. No. 64). As shown herein, this Court has reviewed the Record *de novo* and agrees with the Magistrate's report and adopts it as the order of this Court.

## Background

Plaintiff alleges in her unverified complaint that on or about June 25, 2004, an individual with a psychiatric history named Turian Taylor made allegations against her which led to a warrant being issued for Plaintiff's arrest. Plaintiff alleges that she was charged with exploitation and physical abuse of a vulnerable adult, with the affidavit for the warrant having been signed by the Defendant Kelle Spears and supported by written statements from the Defendant Whitworth and former Defendant Toni Melendez.

1

Plaintiff alleges that, as a result of this warrant being issued, she was jailed on July 29, 2004, and released the following day. Plaintiff further alleges that on January 19, 2007, the Solicitor for the Ninth Judicial Circuit *nolle prossed* these charges. Based on these allegations Plaintiff asserts a cause of action for malicious prosecution against the Defendants.

In support of summary judgment in the case, the Defendant Whitworth has submitted an affidavit wherein he attests that at all times relevant to the allegations of Plaintiff's complaint he was an agent with the South Carolina Department of Labor, Licensing and Regulation, Board of Long Term Care Administrators. Whitworth attests that he investigated Plaintiff and her facility for infractions of the licensing laws, and that during his investigation he learned of allegations that the Plaintiff was forcing one of her nursing home residents, Turian Taylor, to withdraw money from her bank account and turn it over to the Plaintiff, and that if Taylor refused, Plaintiff would inflict bodily injury on Taylor to make her comply. Whitworth attests that he also received complaints of other thefts by the Plaintiff from other residents, as well as assaults against residents and intentional mis-medicating of residents. Whitworth attests that he filed a complaint against Plaintiff with the North Charleston Police Department on April 21, 2004, meeting with the Defendant Spears (a detective) to make the complaint. Whitworth attests that he had no involvement or input into the decision about whether or not to prosecute Plaintiff for these charges, which was a decision solely made by the Solicitor's Office.

The Defendant Kelle Spears has also submitted an affidavit wherein she attests that she is a detective with the North Charleston Police Department. Spears attests that on April 21, 2004, Wayne Whitworth, an agent with the South Carolina Department of

Labor, filed a complaint against Plaintiff with the North Charleston Police Department. Spears attests that she met with Whitworth to take the complaint and also received a verbal statement from Turian Taylor, the alleged victim, as well as statements from Plaintiff's employees. Spears attests that she then applied for and received two warrants for Plaintiff's arrest on June 25, 2004, and that Plaintiff was thereafter arrested on June 29, 2004. Spears attests that she also obtained a search warrant on June 29, 2004 for the financial and medical records of past and current residents of Plaintiff's facility, and a second search warrant on July 1, 2004 in order to retrieve records and files from Plaintiff's computer. The Solicitor dismissed the charges against Plaintiff on January 19, 2007, and that the medical and financial records seized with the search warrant were returned to the Plaintiff on June 25, 2008. Spears attests that she had no involvement or input into the decision about whether or not to prosecute Plaintiff for these charges, that decision being made solely by the Solicitor's Office, and that all times relevant to this action she followed the proper procedures for the performance of her duties. *See generally*, Spears Affidavit.

Plaintiff attests that on June 25, 2004, Turian Taylor (who Plaintiff describes as an individual with a "psychiatric history") made allegations against her which led to a warrant being issued for her arrest. Plaintiff attests that she was charged with exploitation and physical abuse of a vulnerable adult. Plaintiff attests that she has no further charges filed against her for any other "thefts", and is not aware of any other ongoing investigations of her. Plaintiff attests that as a result of these events, she has suffered great loss, that both her personal and business reputations have suffered, and she has experienced declining health. *See generally*, Plaintiff's Affidavit.

3

In response to Plaintiff's affidavit, and as attachments to their reply memorandum, Defendants have submitted copies of written statements that were given by April Brown, Claudette Pinckney, and Turian Taylor. Defendants state that all three of these statements were provided to Whitworth during his investigation, and were in turn provided to Detective Spears. Brown and Pinckney's statements are notarized.

April Brown attests she witnessed residents being fed extremely outdated food, that residents were treated "very mean", and that Plaintiff told her employees on many occasions to "keep the residents in line and don't run to their every call." Brown further attests that Plaintiff told employees to "walk right past them and ignore them and she told us to pinch them if they won't shut up and do as we say." Brown attests that she personally saw the Plaintiff pinch and push resident Harriet Alston, and also kick and step on resident Estelle Brown. Brown attests that she also saw Plaintiff make "Mr. Joe McClennan work outside raking that big yard front & back, then cut the grass. Then she would come and pick him up to take him to her house to do the same thing and it was not voluntary, many times Joe would not feel like going but he was afraid to tell her because she would get mad."

Brown further attests that on different occasions and around the Christmas holidays residents would get little cards with money in them, but that Plaintiff would open their mail and read the card to them and then keep the money, including checks from the government. It is claimed that Plaintiff would tell residents who did not receive their monthly allowance that the money was being spent on their medication. "Mrs. Taylor" [apparently Turian Taylor] was crying and saying that Plaintiff had taken all of her money. Taylor states that one time when she was taking a shower Plaintiff went to

4

her room and took her money out of her purse, that Plaintiff also took her bicycle, and that she later "found that my mink coat was missing also." Taylor also states that Plaintiff took her to her bank to withdraw some money and that Plaintiff forced her to sign the withdrawal slip. Taylor also states that she had to buy her own heater for her room in order to keep it warm, and that most of the belongings she had when she was living on her own (such as kitchen utensils, towels, and other personal property) were taken from her by the Plaintiff.

### Law/Analysis

The magistrate judge makes only a recommendation to this Court. The recommendation has no presumptive weight, and responsibility for making a final determination remains with this Court. *Mathews v. Weber*, 423 U.S. 261, 270-71, 96 S.Ct. 549, 46 L.Ed.2d 483 (1976). This Court is charged with making a *de novo* determination of those portions of the Report and Recommendation to which specific objection is made, and this Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." 28 U.S.C. § 636(b)(1). This Court may also "receive further evidence or recommit the matter to the magistrate with instructions." *Id.*

Here, the Court has conducted a *de novo* review of the Record and considered Plaintiff's lengthy submissions in objecting to the R&R. Many of the points raised in her objections were previously argued to the Magistrate Judge in her opposition to Defendants' summary judgment motions but this Court has addressed the issues raised below.

Plaintiff asserts her malicious prosecution claim against these Defendants pursuant to 42 U.S.C. § 1983. As public employees, both Defendants are subject to suit for damages under § 1983 in their individual capacities. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71. While subject to suit under § 1983, Plaintiff has failed to submit sufficient evidence to give rise to a genuine issue of fact as to whether either named Defendant is subject to liability for having violated her constitutional rights.

In order to pursue a claim for malicious prosecution, Plaintiff must show both that the initiation or maintenance of the proceeding against her was without probable cause to support it, and that the matter was terminated in her favor. *Lambert v. William*, 223 F.3d 257, 260-261 (4th Cir. 2000). Here, the charges against Plaintiff were *nolle prossed*, and since the Defendants have not contested the basis for the dismissal of these charges, it is at least arguable for purposes of summary judgment that the state prosecution was terminated in Plaintiff's favor. *White v. Coleman*, 277 F.Supp. 292, 297 n. 2 (D.S.C. 1967). Nevertheless, this claim is still subject to dismissal as Plaintiff has failed to present evidence sufficient to give rise to a genuine issue of fact as to whether either of these two Defendants initiated or maintained the criminal proceedings against her without probable cause.

In assessing the existence of probable cause, whether an arrestee is ultimately found to be guilty or innocent on the criminal charge itself is not determinative. *White*, 277 F.Supp. at 297. Rather, courts examine the totality of the circumstances known to the officer or officers at the time of the arrest. *Taylor v. Waters*, 81 F.3d 429, 434 (4th Cir. 1996) (in assessing the existence of probable cause, courts examine the totality of the circumstances known to the officer or officers at the time of the arrest). To prove an

absence of probable cause, Plaintiff must set forth sufficient facts to show that a reasonable officer would not have been justified in concluding that she committed the criminal act at issue. *Brown v. Gilmore*, 278 F.3d 362, 368 (4th Cir. 2002). Plaintiff has failed to make this showing. To the contrary, the affidavits and other exhibits presented clearly show that both of the Defendants received information, including sworn statements, from employees and at least one resident of Plaintiff's nursing facility in which various assertions of misconduct were outlined. This information was then presented to a neutral judicial officer, who issued arrest warrants on the charges of exploitation of a vulnerable adult and physical abuse of a vulnerable adult, both crimes under state law. *See* Defendants' Exhibits A, B, and C; see also S.C. Code Ann. § 43-35-88(B) and (D), as amended.

Plaintiff has provided no evidence whatsoever to counter this evidence, or to support the general and conclusory claims made in her complaint and in her affidavit that Taylor's statement should not have been accepted because she was "mentally incapacitated", or that Whitworth and Spears failed to follow usual investigative practices in their investigation of these allegations. *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987) ("Even though pro se litigants are held to less stringent pleading standards than attorneys the court is not required to 'accept as true legal conclusions or unwarranted factual inferences.'").

To prove an absence of probable cause, Plaintiff must set forth facts which made it unjustifiable for the Defendants to conclude that she was violating the law. *White*, 277 F.Supp. at 297. Plaintiff has not only failed to present such evidence, she concedes in her affidavit that Taylor made the allegations which led to the warrant being issued for her

7

arrest. See Plaintiff's Affidavit, ¶ 3. As a basis for her claim, Plaintiff simply notes that the charges against her were dismissed, and complains that they should never have been brought. This is not sufficient "evidence" to give rise to a genuine issue of fact as to whether either named Defendant was unjustified in concluding that she had committed a criminal act based on the totality of the circumstances known to the Defendants at the time of Plaintiff's arrest.

## Conclusion

Based on the above, this Court grants Defendants' motion for summary judgment and Plaintiff's claims are dismissed.

**AND IT IS SO ORDERED.**

Richard Mark Gergel
United States District Court Judge

February 18, 2011
Charleston, South Carolina